Blackford, J.
— “The fifth count is objected to on account of the manner in which the bond is alleged to have been executed'by the defendant; hut the objection is unfounded. If, as alleged, Dinwiddle and the defendant, and the board of commissioners agreed, that Evans’s name in the bond should be erased and the defendant’s inserted in its place, and if, as is also alleged, such erasure and insertion were accordingly made, the bond was, at all events, valid against *119 Dinwiddie and. the defendant; and if, as is further alleged, the alteration was made without the knowledge or consent of Police and Burnside, they {Police and Burnside) were discharged from the bond, and the same became the bond oí Dinwiddie and the defendant alone.
•* It is also objected to this count that the bond described in it was not authorised by law, and that it is not shown that the bond after being executed by the defendant, was accepted by the board of commissioners. As to the first of these objections, we need only refer to the act of 1831, which required such bonds to be given. E. C. 1831, p. 481. As to the last objection the count states that the-bond when first given in 1836, was approved by the board of commissioners. It also alleges that Dinwiddie, desirous to have the defendant’s name inserted in the bond instead of Evans's, applied for that purpose, to the board of commissioners then in session, and that such proceedings were thereupon had before said board, that, afterwards, to wit, on, &c., the change was made. That is a sufficient averment, in substance, that the alteration of the bond was approved by the board. We consider, therefore, that the fifth count, is unobj ection able.
“ The next question is as to the validity of the 1st, 2d, 3d, 4th, and 6th pleas to the fifth count, which pleas are all sworn to.
“ The first plea states, that at the time when the name of Evans was struck out, and he was released, and when the defendant executed the bond, he, the defendant, did not know, or believe, or suspect, that Evans's name was struck out, and that he {Evans) was released without the knowledge or consent of Police and Burnside. The second plea is similar to the first. These first two pleas are clearly bad. The circumstance, that the defendant, when he executed the bond, did not know, believe, or suspect, that the striking out of Evans's name and Evans's release were without the knowledge of Police and Burnside, does not affect the defendant’s liability. If he did not wish to be bound unless as a co-obligor with Police and Burnside, he should have ascertained before he executed the bond, whether or not they had agreed to the alteration, and upon finding that they had not, he should have declined to execute it.
” The third pica, besides the matter contained in the first, states that when the defendant executed the bond, he supposed, believed, and understood that, by executing it lie was to become bound jointly and severally with Dinwiddie, Polke, and Burnside, and not with Din-widdie alone. This plea is also bad. It was of no consequence *120 what the defendant supposed, believed, or understood, as to the effect of his executing the bond. He must be bound, in the absence of any misrepresentation of facts, by the legal effect of Ms contract.
“The fourth plea, in addition to what is contained in the-first, says, that when the defendant executed the bond, it was understood and intended both by the defendant and the board of commissioners that, by the execution of the bond, the defendant was to become bound, according to the terms thereof, jointly and severally with Dinwiddie, Polke, and Burnside, and not with Dinwiddie alone. The sixth plea is similar to the fourth except that it omits what is contained in the first plea. These pleas go further than the third. They allege that when the defendant executed the bond, it was understood and intended, not only by the defendant, but by the board of commissioners also, that the defendant was only to become bound as alleged in the third plea. We think, however, that these pleas are also bad. The parties to a transaction are presumed to know what will be its legal effect, and to intend that it shall have that effect. In the case before us, the legal result of the erasure and insertion aforesaid, under the circumstances of the cape, was to release Polke and Burnside from the bond, and to cause it to be the bond of the defendant and Dinwiddie alone ; and the defendant cannot be permitted to aver that those acts were not intended to produce that effect.
The 7th, 8th, 9th, 10 th, and 11th pleas, remain tobe examined. These pleas are to the breaches assigned in the fifth count, which breaches are, substantially, that ⅛1⅞ county agent had received money, &c., by virtue of his office, which he had failed to pay over, &c. The pleas say, in substance, that said money, &e., did not come into the agent’s hands after the defendant's execution of the hand. Tffese pleas are bad, because they give no sufficient reason for the agent’s failure, after the defendant’s execution of the bond, to pay over the money, <fcc. It was not material when the agent received the money, &c. If, after the defendant executed the bond, the agent, having money, &c., in his hands, as alleged, failed to pay over the same, &c., the bond was forfeited.”
Judgment reversed, áse.